# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 6, 2023
Lyle W. Cayce
Clerk

No. 21-60380

Arafat Shimenyi Mohndamenang,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals
Agency No. A203 600 957

Before Jones, Smith, and Graves, *Circuit Judges*.

Per Curiam:

Arafat Mohndamenang petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial by an immigration judge ("I.J.") of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] Arafat requested a stay of removal pending this petition for review; that request was carried with the case. We deny the petition and the stay of removal.

---

[1] Petitioner's brief refers to him as "Arafat." We do the same.

No. 21-60380

I.

Arafat is a native and citizen of Cameroon. He applied for admission to the United States in 2019 and was subsequently charged with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I). On November 13, 2019, he appeared and admitted that he was removable as charged but announced his intention to apply for asylum or withholding of removal based on his political opinion and sought protection under the CAT.

At his hearing before the I.J., Arafat, represented by counsel, admitted that he had no corroborative materials but testified that he feared returning to Cameroon because the government was killing "English-speaking Cameroonians" such as himself. He told the I.J. that he had been arrested by the Cameroonian government and was tortured daily while in detention. He testified that he had later been involved in a peaceful protest when the military appeared and shot dead some of the participants. He subsequently escaped Cameroon.

The I.J. issued an oral decision denying Arafat's application because his testimony was too vague to be credible and he had not corroborated his claims.[2] The I.J. further stated the claims could have been corroborated via "what could be reasonably available documents" such as "a letter from a family member or a friend, or someone who can comport this story."

In his appeal to the BIA, Arafat contended, in part, that the I.J. had erred in finding that he was not credible and that the I.J. should have developed the record by asking him follow-up questions before making a credibility determination. Arafat submitted the 2019 Cameroon country report, several

---

[2] The I.J. additionally denied Arafat's application because of the then-effective third-country transit bar. That bar has subsequently been lifted and is not at issue in this proceeding.

newspaper articles describing the ongoing crisis in Cameroon, and affidavits from his wife, neighbor, family attorney, and uncle. Arafat asked the BIA to remand to the I.J. for further factual development. The BIA agreed and remanded "for consideration of the new evidence in the first instance, and for reassessment of [Arafat's] credibility," and counseled that "the parties should be allowed to submit additional pertinent evidence."

Arafat appeared *pro se* before a new I.J. with his new evidence and re-testified in more detail, but the new I.J. denied his application. This time, the I.J. found that Arafat was credible but had not offered sufficient corroborating evidence to support his testimony to establish his claim for asylum. The I.J. found that because none of the affiants "actually have any personal knowledge of the[] events" described in Arafat's testimony, and because Arafat "provided no other evidence of any injuries he stated he suffers," "essentially, the only thing respondent has to show that these incidents actually occurred . . . is his own testimony."

The I.J. held that "[e]ven if [Arafat] were to have been found to have provided sufficient corroboration, the Court would, in the alternative, deny his application for asylum because he failed to show past persecution or a well-founded fear of persecution on account of a protected ground." The I.J. denied Arafat's withholding-of-removal claim because it was "factually related to an asylum claim, but the standard of proof is harder to meet than the well-founded fear requirement for asylum." Finally, the I.J. denied Arafat's CAT claim because first, "the harm [he] allegedly experienced did not rise to the level of persecution"; second, he "failed in his burden to show it [was] more likely than not he would be tortured by or at the instigation of or with the consent or acquiescence of a public official if returned to Cameroon"; and third, there was not "independent evidence sufficient to meet [his] burden of providing eligibility for protection under the [CAT]."

Arafat appealed to the BIA, which affirmed the I.J.'s denial on all claims. The Board affirmed the denial of the asylum and withholding-of-removal claims on account of Arafat's lack of corroboration. The BIA then affirmed the denial of CAT protection "for the reasons stated in the [I.J.'s] decision, which includes his finding of the lack of independent evidence concerning the respondent's claimed fear of torture."

Arafat timely petitioned this court for review, raising three issues: first, whether the BIA erred in requiring him to provide additional specific evidence supporting his credible testimony without following the procedures laid out in *Matter of L-A-C-*, 26 I. & N. Dec. 516 (BIA 2015). Second, whether the BIA ignored substantial record evidence, including country-conditions evidence that corroborated his claims for asylum, withholding of removal, and CAT protections. Third, whether the BIA erred in affirming the denial of his CAT claims.

II.

"When considering a petition for review, this court has the authority to review only the BIA's decision, not the [I.J.]'s decision, unless the [I.J.]'s decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009) (citing *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997)). "We review the BIA's factual findings under the substantial evidence standard" and do not disturb such findings unless the evidence compels a contrary conclusion. *Orellana-Monson v. Holder*, 685 F.3d 511, 517–18 (5th Cir. 2012). We review legal conclusions *de novo* "unless a conclusion embodies the [BIA's] interpretation of an ambiguous provision of a statute that it administers." *Id.* at 517 (alteration in original) (quoting *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006)). Such conclusions receive *Chevron* deference. *Id.*

### III.

We begin with Arafat's contention that the I.J. violated the procedure for corroborating evidence as laid out by *Matter of L-A-C-*, 26 I. & N. Dec. at 521–23.

Under the Immigration and Nationality Act ("INA"), "[t]he testimony of an applicant may be sufficient to sustain the applicant's burden without corroboration." 8 U.S.C. § 1158(b)(1)(B)(ii). But this is so only "if corroboration is not reasonably available to the applicant." *Rui Yang v. Holder*, 664 F.3d 580, 586 (5th Cir. 2011) (emphasis removed). In other words, corroborating evidence must be provided unless the applicant demonstrates that he "does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii).

The I.J. determined Arafat to be credible but dismissed his claims of asylum and withholding of removal because Arafat had not provided what the I.J. determined to be sufficient corroborating evidence. As part of that decision, the I.J. found that the affidavits Arafat had submitted from his wife, uncle, neighbor, and family lawyer could not corroborate Arafat's testimony because none of the affiants had been present at the alleged beatings. The I.J. further held that supporting documents would have been reasonably available to Arafat.

On petition for review, Arafat contends that the agency erred by requiring specific corroborating evidence from persons who were "present" at Arafat's protests and beatings without (a) giving Arafat a chance to explain why that evidence was not reasonably available and (b) addressing whether Arafat's explanation was sufficient. He contends that the agency was required to do so because of the BIA's interpretation of procedural requirements regarding corroborating evidence in *Matter of L-A-C-*:

[W]hen the [I.J.] determines that the applicant should have

> submitted specific evidence to corroborate credible testimony . . . the [I.J.] should: (1) give the applicant "an opportunity to explain why he could not reasonably obtain such evidence," (2) "ensure that the applicant's explanation is included in the record," [and] (3) "clearly state for the record whether the [applicant's] explanation is sufficient . . . ."

*Avelar-Oliva v. Barr*, 954 F.3d 757, 770 (5th Cir. 2020) (fourth alteration in original) (quoting *Matter of L-A-C-*, 26 I. & N. Dec. at 518–22).

The BIA's interpretation of ambiguous terms in the INA is accorded *Chevron* deference.[3] But we need not reach the issue of whether such procedures are in fact required by the INA because the I.J. never required "specific corroborating evidence" from Arafat. The I.J. did not hold one missing piece of evidence to be the *sine qua non* to corroboration. Instead, the I.J. engaged in a comprehensive analysis of why Arafat's credible testimony was not corroborated by the evidence provided; the I.J. decided that such evidence would have been reasonably available to Arafat. In such a case, the BIA's procedures do not apply.[4]

## IV.

Arafat further contends, however, that even if the I.J. did not err procedurally, the judge erred in determining that Arafat had not provided sufficient corroborating evidence to grant his petitions for asylum and with-

---

[3] *Negusie v. Holder*, 555 U.S. 511, 517 (2009) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999)); *see also Avelar-Oliva*, 954 F.3d at 770–71 (applying *Chevron* deference to another of the BIA's interpretations of 8 U.S.C. § 1158(b)(1)(B)(ii)).

[4] This holding was confirmed by the BIA, which stated, "The record does not reflect that the [I.J.] restrictively required any specific corroborating evidence. Rather, the [I.J.] found that, overall, the respondent did not sufficiently corroborate his testimony . . . ."

holding of removal.[5] Such a decision is highly discretionary: We do not overturn findings of fact unless we determine "not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

To support his testimony, Arafat showed the I.J. his injured foot and provided country reports from 2018 and 2019 along with newspaper articles documenting the situation. The government provided evidence showing that Anglophones had engaged in "mass protests," to which "security forces responded with bullets and teargas" on the same day that Arafat alleged he was detained by the military. Arafat also provided affidavits from his wife, uncle, neighbor, and family lawyer.

Arafat claims that the I.J. did not consider this record evidence and asks for remand. *See Sharma v. Holder*, 729 F.3d 407, 412–13 (5th Cir. 2013) (reversing a claim when the agency did not consider substantial record evidence). The oral decision, however, makes clear that the I.J. did consider all of Arafat's evidence and properly decided that it was not sufficient to corroborate his testimony.

Specifically, because none of the affiants had been present for the events they recounted and were "merely reciting what the respondent or someone else told them," the I.J. held that the affidavits could not count as corroboration. Without these, there was no primary-source evidence linking Arafat to the claimed torture, military beatings, or detention, so the I.J. found there to be insufficient corroboration. The pieces of evidence possibly to the contrary—namely, Arafat's injured toe and the country and newspaper

---

[5] The decision was also affirmed by the BIA, so we may review. "We agree with the [I.J.] that the respondent's corroborative evidence did not sufficiently support his testimony." *See Wang*, 569 F.3d at 536.

reports—are not sufficient to show that the I.J.'s holding was substantially in error. The country and newspaper reports, while making it possible that Arafat suffered what he claimed to suffer, offer only circumstantial evidence. In this posture, we "should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole . . . [and] should not supplant the agency's findings merely by identifying alternative findings that could [also] be supported by substantial evidence." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) (citation omitted).

Arafat contends that "the government corroborated key elements of his claims by conceding that he participated in the September 2017 protest and by submitting newspaper accounts of the military responding to protests with gunfire and tear gas." Though the government did submit these accounts, there is no evidence in the record that the government conceded Arafat's presence at the September 2017 protests. The portions of the record cited by Arafat merely show the government's questioning Arafat's account of the protest, which does not suffice to constitute concession.

Arafat further states that the I.J. was wrong to hold that he "provided no evidence of any injuries he incurred as a result of his September 22, 2017, arrest and subsequent 29-day detention." At trial, Arafat tried to show the I.J. the injured foot at the hearing, but the I.J. stopped him, saying "stop, stop, stop." It is unclear from the record whether Arafat actually showed the I.J. his injured foot or whether the I.J. erred in stating that there was no evidence of injuries.

Regardless, we deny Arafat's petition. Under our deferential standard of review, we may not grant review unless we find that "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), or that the evidence presented is "so compelling that no reasonable factfinder" could find that he is ineligible for relief or protection

No. 21-60380

from removal," *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992). The I.J. found that "[e]ssentially, the only thing [Arafat] has to show that these incidents actually occurred and the way they actually occurred is his own testimony." Without more, the fact of injury cannot show that it was sustained in the alleged manner.

V.

Arafat disputes the I.J.'s dismissal of his CAT claim. Such a claim requires him to show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). To determine whether a petitioner has made out this claim, courts consider, *inter alia*,

> (i) Evidence of past torture inflicted upon the applicant;
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3).

The I.J. dismissed Arafat's CAT claim for three reasons. First, the I.J. held that the one alleged incident of detention and resulting mistreatment did not "rise to the level of persecution" and thus did not constitute past torture. Second, he found that Arafat's evidence failed to show it was more likely than not that he would be tortured by a state actor if he returned to Cameroon because "[i]n light of . . . recent and wide sweeping changes, it is unlikely the government or military have any inclination to want to torture the respondent should he be returned to Cameroon." Finally, the I.J. noted that "the record does not contain independent evidence sufficient to meet [Arafat's] burden of proving eligibility for protection under the [CAT]."

No. 21-60380

The BIA affirmed the I.J.'s holding on all three bases.

Arafat disputes all of this, claiming that he was tortured multiple times, and even if he were not, one incident can constitute torture, and that the I.J. was incorrect that country conditions in Cameroon had changed. Without reaching the merits of these claims, however, we uphold the I.J.'s dismissal of the CAT claim for the same reason we affirmed the dismissal of the asylum and withholding-of-removal claims: There are no grounds to reverse the I.J.'s holding that Arafat had not provided sufficient corroborating evidence to support his testimony.

The petition for review is DENIED. The request for a stay of removal is DENIED as moot.

No. 21-60380

James E. Graves, Jr., *Circuit Judge*, concurring in the judgment:

Section 208 of the INA is ambiguous regarding "the procedural requirements for submitting corroborating evidence." *Matter of L-A-C-*, 26 I. & N. Dec. at 518. "The BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" *Negusie v. Holder*, 555 U.S. 511, 516–17 (2009) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999)). I would adopt the BIA's interpretation of § 208(b)(1)(B)(ii) as laid out in *Matter of L-A-C-*:

> [a]t the merits hearing, in circumstances where the Immigration Judge determines that specific corroborating evidence should have been submitted, the applicant should be given an opportunity to explain why he could not reasonably obtain such evidence. The Immigration Judge must also ensure that the applicant's explanation is included in the record and should clearly state for the record whether the explanation is sufficient.

26 I. & N. Dec. at 521 (citations omitted).

The majority concludes that "we need not reach the issue of whether such procedures are in fact required by the INA because the I.J. never required 'specific corroborating evidence' from Arafat." This is because, according to the majority, "[t]he I.J. did not hold one missing piece of evidence to be the *sine qua non* to corroboration." The BIA in *Matter of L-A-C-* did not say that the procedures in § 208(b)(1)(B)(ii) only apply if the evidence is the "*sine qua non*" to corroboration, and I would find that the procedures may still apply even if there are multiple pieces of missing evidence.

This case, however, falls under a category that the BIA sidestepped: "circumstances in which the absence of corroborating evidence may be so glaring that no explicit opportunity to explain its absence needs to be given."

No. 21-60380

*Matter of L-A-C-*, 26 I. & N. Dec. at 521 n.4. Mohndamenang was given ample opportunity over multiple proceedings to explain the lack of corroborating evidence. During the first proceeding, the IJ said "I don't have any corroborative materials." Mohndamenang testified that he was unable to procure corroborating evidence at the time. On appeal from his first proceeding, Mohndamenang submitted several pieces of evidence that he claimed corroborated his account. The BIA remanded the case so that this new evidence could be considered and so that "additional pertinent evidence" could be submitted. During the next hearing, The IJ gave Mohndamenang multiple opportunities to explain why several parts of his story remained uncorroborated. His answers were insufficient.

    These proceedings constituted an opportunity for Mohndamenang to explain the lack of corroborating evidence. He did not. I agree that his petition for review should be denied.